**Samuel Joel SEEK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0828–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 23, 1982.

Ray Epps, Houston, for appellant.

Alvin Titus, Houston, for appellee.

Before EVANS, C.J., and JACK SMITH and DUGGAN, JJ.

## OPINION

EVANS, Chief Justice.

A jury convicted the appellant of aggravated rape and assessed his punishment at five years imprisonment. The judgment is affirmed.

The appellant was indicted for the offense of aggravated rape under § 21.03 of the Texas Penal Code, which provides,

(a) A person commits an offense if he commits rape as defined in § 21.02 of this code . . . and he:

(1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode; or

(2) by acts, words, or deeds places the victim in fear of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone . . .

(3) by acts, words, or deeds occurring in the presence of the victim threatens to cause death, serious bodily injury, or kidnapping to be inflicted on anyone; or

(4) uses or exhibits a deadly weapon in the course of the same criminal episode. . . .

Section 1.07(a)(34) of the Penal Code defines the term "serious bodily injury" as meaning ". . . injury that creates a substantial risk of death or that causes death, serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ."

In his first ground of error the appellant contends that the evidence is insufficient to support his conviction for *aggravated* rape, arguing that the State failed to prove that by acts, words, or deeds, he placed the complainant in fear of serious bodily injury or death. Because the sufficiency of the evidence is challenged, we will discuss the facts in some detail.

The complaining witness, a former girlfriend of appellant's brother-in-law, had been living as a guest in the appellant's home for about three months at the time of the incident. She was sharing a bedroom with the appellant's children. At the time of the incident, the air conditioning at appellant's home was out of order, so to escape the heat, appellant and his family were staying temporarily at the home of his wife's parents. The complainant, however, remained at the appellant's house.

The offense occurred sometime after midnight on September 3, 1981. The previous day, appellant had worked at his father-in-law's air conditioning and plumbing company, and beginning about 2:00 p.m. he and his co-workers started drinking beer. By the time he reached his father-in-law's house that evening, appellant had had about twelve cans of beer. When he arrived at the house, he and his wife argued about his drinking, and as a result she refused to go to a scheduled dance lesson. This upset the appellant and he left, saying he was going to the lesson alone. On his way home to shower and change, the appellant bought another six pack of beer. After cleaning up, he went to a club, but finding none of his friends, he went to another club where he began drinking mixed drinks. According to his testimony, the last thing he remembers about that night was leaving the club, dropping his hat and someone commenting, "man, you look bad," or "can you make it?". He claimed to remember nothing else until he awoke the next morning at his in-law's house in bed with his wife and two children.

The appellant's wife testified that when the appellant returned to his in-law's house about midnight, they had again argued over his drinking. After he had been there twenty or thirty minutes, he left with his five-year old daughter, saying that he was going home. The appellant's wife testified that when he got home, he called her three times in about thirty minutes asking her to come home, but each time she refused, saying it was too hot.

The complainant testified that she had gone to bed between 10:00 and 11:00 p.m. on September 2, and was awakened shortly after midnight by the noise of the appellant and his daughter coming into the house. She testified that after a very brief conversation with appellant, she took his daughter and went back to bed. About fifteen minutes later, the appellant suddenly climbed in bed between her and the child. She insisted that he get out and when he failed to do so, she got up and headed toward the light switch. However, the appellant grabbed her and forced her into the dining room. He pushed her to the floor, where he began choking her with both hands. She testified that at that point, prior to intercourse, she had been placed in fear for her life and in fear of serious bodily injury. She further testified that although she fought the appellant and pulled his hair, he forceably had sexual intercourse with her. Afterwards, the appellant released her and went to the bathroom where he got sick. She went into the bedroom, got the child who was awake and crying, and started to leave the house. Before she could do so, the appellant came out of the bathroom and refused to let her take his daughter, so she left alone. She then went about two blocks to the home of her godparents, and after making some phone calls, she took a shower and went to the hospital emergency room. She prepared a rape kit, which proved positive and was admitted at trial. She reported the rape to the police that same date.

The appellant's wife testified that the appellant and their child arrived back at her parent's house about 3:30 a.m. on September 3rd, and that appellant slept until leaving for work later that day.

A police detective, who had interviewed the complainant, testified that both of her

arms were bruised from the wrist to the elbow and that there was a scratch on her chin. The complainant testified that after the appellant had thrown her to the dining room floor, he hit her in the face and choked her with both hands. She said that she had been unable to breath while the appellant was choking her, and that she was in fear for her life and serious bodily injury. She testified that the choking left "very light marks" on her throat, and that at some point, the appellant had threatened to kill her.

■ The appellant contends that these injuries and the subsequent death threat were not sufficient to constitute proof of aggravating circumstances, citing *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App.1979); *Rucker v. State*, 599 S.W.2d 581 (Tex.Cr. App.1980); *Bright v. State*, 585 S.W.2d 739 (Tex.Cr.App.1979); *McAfee v. State*, 624 S.W.2d 776 (Tex.Cr.App.—Houston [14th Dist.] 1981); *Buckley v. State*, 630 S.W.2d 740, 742 (Tex.App.—Houston [1st Dist.] 1982 pet. ref'd). Appellant also contends that because he did not use a weapon or compel submission by an express verbal threat, the evidence was not sufficient under the cases cited to prove aggravated rape. This contention is overruled.

All of the cases relied upon by the appellant concerned offenses that occurred prior to September 1, 1981, the effective date of the revised aggravated rape statute, Texas Penal Code Section 21.03. Prior to that date, Section 21.03 provided that a person commits an offense if he commits a rape, as defined by Section 21.02, and he:

(1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode; or

(2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone ...

The 1981 change in the statute added subsections (3) and (4) and rewrote subsection (2) to provide as follows,

(2) by *acts, words,* or *deeds* places the victim in fear of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone; ... (emphasis added)

■ Thus, the clear intent of the legislature in amending this statute was to authorize a conviction for aggravated rape if there is proof that the defendant "by *acts, words, or deeds*" places the victim in fear of death or serious bodily injury.* Under the statute as amended, we hold that the trier of fact is entitled to consider not only injury actually inflicted and express verbal threats made by appellant, but also his objective conduct, i.e. his acts, words, or deeds. Thus, the fact finder may infer from the totality of the circumstances whether a person's overall conduct placed the victim in fear of death or serious bodily injury. Viewing the evidence in a light most favorable to the verdict, we find there were aggravating circumstances proven which support the jury's finding.

■ The appellant next complains that while the indictment alleges "acts, words *and* deeds", the court's charge alleged in the disjunctive "acts, words *or* deeds". The record does not reflect that the appellant's trial counsel made any objection to the charge on this ground, but we are required to review the ground in the interest of justice. Sect. 40.09(13).

Contrary to the appellant's contention, the indictment and charge are not in fatal variance as they both only allow conviction under Sect. 21.03(a)(2). The charge did not

---

* In interpreting the meaning of the new language, we considered the following. In *Seaton v. State*, 564 S.W.2d 721 (Tex.Cr.App.1978), the Court of Criminal Appeals held that the term "threats" was not limited to express verbal threats, but could be communicated by "acts, words or deeds." (Id. at 724). Subsequently, a different panel of the court decided *Rucker v. State, supra,* and held that aggravating circum- stances were only present when an express verbal threat is made, a deadly weapon exhibited, or a serious bodily injury was, in fact, inflicted. (Id. at 586). The court specifically held that to the extent *Seaton* conflicted with *Rucker* it was overruled. The 67th Legislature amended the statute by incorporating the language from *Seaton,* i.e., "acts, words or deeds."

authorize conviction on a theory not alleged in the indictment. *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979). The fact that the indictment alleged matters in the conjunctive and the charge required proof in the disjunctive, does not constitute reversible error. *Cowan v. State,* 562 S.W.2d 236 (Tex.Cr.App.1978); *Zanghetti v. State,* 618 S.W.2d 383 (Tex.Cr.App.1981). The appellant's second ground of error is overruled.

In his third ground of error the appellant contends that the trial court erred in refusing to charge the jury on the issue of intoxication. Appellant claims that the evidence fairly raised the issue of whether or not he was intoxicated to the point that he could not have achieved an erection and, therefore, that there could be penetration. He also contends that he was entitled to an instruction on temporary insanity because his testimony, corroborated by that of a physician, indicated that he was unable to remember what he did during the time period in which the rape occurred.

The complainant testified not only that penetration had occurred, but that the appellant ejaculated, and her testimony was substantiated by the results of the test conducted on the rape kit. The court's charge listed "sexual intercourse" as an element of the offense of aggravated rape, and the term "sexual intercourse" was properly defined as "any penetration of the female sex organ by the male sex organ." The jury was entitled to conclude from the evidence that sexual intercourse had occurred, and we find the appellant's rights to have been adequately protected by the court's charge.

■ The fact that the appellant became voluntarily intoxicated would not constitute a defense to the commission of the crime, and any evidence of temporary insanity caused by such intoxication was only admissible in mitigation of the penalty attached to the offense. Texas Penal Code Sect. 8.04. The appellant did not request an instruction on temporary insanity at the punishment phase of the proceedings. Furthermore, the appellant's testimony that he was unable to remember the events of the crime, was not sufficient to raise the issue of temporary insanity due to intoxication. *Hart v. State,* 537 S.W.2d 21 (Tex.Cr.App. 1976). The appellant's third ground of error is overruled.

■ The appellant's fourth ground of error asserts that the trial court erred in refusing to charge the jury on the offenses of aggravated assault and assault, which the appellant contends are lesser included offenses of aggravated rape. In a post-submission statement to the court, the appellant has waived this ground of error and it need not be considered. We note, however, that before a charge is required on a lesser included offense there must be evidence that the defendant if guilty, is guilty only of the lesser included offense. *Williams v. State,* 575 S.W.2d 30 (Tex.Cr.App.1979). Here the appellant pleaded not guilty, and the only evidence he presented was that he could not remember what transpired the night of the offense. Under such circumstances, a charge on any lesser included offense was not required. *Eldred v. State,* 578 S.W.2d 721 (Tex.Cr.App.1971); *Hall v. State,* 630 S.W.2d 709 (Tex.App.—Houston [1st Dist.] 1981 pet. den'd). The fourth ground of error is denied.

The trial court's judgment is affirmed.